1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

CENTURY SURETY COMPANY,

CASE NO. 14CV0687-WQH-NLS

11

Plaintiff,

ORDER

vs.

12

WEIR BROTHERS
CONSTRUCTION CORP.,

13

Defendant.

14

WEIR BROTHERS
CONSTRUCTION CORP.,

15

Counterclaimant,

vs.

16

CENTURY SURETY COMPANY,

17

Counter-Defendant.

18

HAYES, Judge:

19

        The matter before the Court is the Motion for Summary Judgment (ECF No. 16)

20

filed by Plaintiff and Counter-Defendant Century Surety Company.

21

**I.  Background**

22

        On March 26, 2014, Plaintiff and Counter-Defendant Century Surety Company

23

("Plaintiff" or "Century Surety") commenced this action by filing the Complaint for

24

Reformation in this Court.  (ECF No. 1).  Plaintiff alleges that it and Defendant and

25

Counterclaimant Weir Brothers Construction Corp. ("Defendant" or "Weir Brothers")

26

intended to enter into a "claims made" liability insurance policy, but endorsement CBL

27

1902 (07/08) was mistakenly included in the policy, converting it into an "occurrence"

28

policy.[1]  Plaintiff requests reformation of the policy and deletion of endorsement CBL 1902 (07/08).  On May 19, 2014, Defendant filed an Answer and Counterclaims.  (ECF No. 6).  On June 6, 2014, Defendant filed an Amended Answer and Counterclaims, which is Defendant's operative pleading in this case.  (ECF No. 8).  The Amended Answer and Counterclaims alleges that Defendant was unaware of the intricacies of insurance policies and believed that Plaintiff had issued it an appropriate insurance policy.  The Amended Answer and Counterclaims asserts two counterclaims: (1) declaratory judgment; and (2) breach of the covenant of good faith.  Defendant seeks a judicial determination that the policy issued by Plaintiff is valid and enforceable as written and that Defendant is entitled to a defense and recovery of fees in an underlying lawsuit against Defendant for a construction defect ("Moody Creek Farms litigation").  Defendant also seeks compensatory and punitive damages on the grounds that Plaintiff is attempting to reform the policy without legal grounds and engaged in "dilatory claims handling" in response to Defendant's tender of defense for the Moody Creek Farms litigation.  *Id.* at 16.

On December 3, 2014, Plaintiff filed the Motion for Summary Judgment.  (ECF No. 16).  On February 12, 2015, Defendant filed an opposition.  (ECF No. 20).  On February 20, 2015, Plaintiff filed a reply, accompanied by objections to Defendant's evidence, and three declarations.  (ECF No. 22).

## II.  Facts

"In or about July 6, 2005, Weir Brothers entered into a construction contract with Moody Creek Farms, LLC ('MCF') to construct a home at a cost of $3.8 million." (Defendant's Response to Plaintiff's Separate Statement of Purportedly Undisputed Material Facts ("Def.'s RSSUF") ¶ 1, ECF No. 20-4 at 2).  "The scope of the construction contract expanded over time and the project extended over a period of

---

[1]  "A claims-made policy usually provides coverage for prior [injuries] so long as the claim is made during the policy period.  Occurrence policies generally cover the insured for claims arising out of an occurrence that took place during the policy period, even if the claim is made after the policy expires."  *Merrill & Seeley, Inc. v. Admiral Ins. Co.*, 225 Cal. App. 3d 624, 628 (1990).

several years." *Id.* ¶ 2.

On May 27, 2008, Jennifer Fulcher of American E & S[2] sent an email to quotes@centurysurety.com stating:

> Attn: Monique M.,
>
> Please see the attached submission for an account that is new to our office. The insured is a home builder of high end custom homes, currently insured with Golden Bear for $ 113,550 for 10 million in receipts. Attached is the accord application, supplemental and 5 years currently valued loss runs. Thank you.

(Pl.'s Ex. 1, ECF No. 16-7 at 7).   Attached to the email is an application for an insurance policy prepared on behalf of Defendant.[3]   On the first page of the application, boxes titled "Proposed Eff Date" and "Proposed Exp Date" are filled in with "08/15/08" and "08/15/09." *Id.* at 8.  In a section of the application titled "Commercial General Liability Section," under a subsection titled "Coverages," boxes for "Commercial General Liability" and "Claims Made" are checked.  *Id.* at 10.  The box for "Occurrence" is not checked.  *Id.*  In a section of the application titled "Prior Carrier Information," "[t]he application state[s] Weir Brothers had been insured under a 'claims made' policy for the prior five years."  (*Id.* at 9; Def.'s RSSUF ¶ 6, ECF No. 20-4 at 3).

On August 14, 2008, Chris Houska of CRC Insurance Services ("CRC"), Century Surety's insurance broker, sent an email to Robert Butterworth of Century Surety, stating:

> I realize you do not want to handle last minute BOR's but I have been asked to approach you. As stated my retailer was given one market (FFIC) whom we went to and obtained an occurrence quote of 64k off 8mm sale for 1/2/2 5k deductible.
>
> Upon presenting to the insured we discovered they are with Golden Bear on a claims made policy with a 8/15/99 retro date. To say the least the rating and form is not what it should be and the insured therefore cannot switch to occurrence at this time.
>
> It appears the incumbent only presented Golden Bear and Navigators after being given the entire market. The insured therefore feels he was not presented all options.

---

[2] Neither party identifies Jennifer Fulcher or American E & S.

[3] Neither party has submitted evidence indicating who prepared the application.

> We have an order at an 8.50 rate for limits of 1/2/2 on a claims made form with the 8/15/99 retro date. Based off the 8mm sales the premium would be 68k and we could bind first thing tomorrow upon receiving our quote. I know you may need to get a release but due to the circumstances I hope you can offer us and the insured every consideration possible.
>
> Thanks in advance for your attention to this.

(Pl.'s Ex. 2, ECF No. 16-7 at 20). Attached to the August 14, 2008 email is a letter signed by Robert Weir, and with Weir Bros. Construction Corp. letterhead, that states: "Please be advised that effective August 14, 2008 we are appointing Robert Kempa of Westland Insurance Brokers and CRC Sterling West Insurance Servises [sic] as our exclusive broker of record with respects to our insurance coverage." *Id.* at 21.

In response to Chris Houska's email, Century Surety provided a "quote." (Def.'s RSSUF ¶ 10, ECF No. 20-4 at 5).[4] The "quote" is a form with a "Century Surety Company-Construction Division" heading. (Pl.'s Ex. 3, ECF No. 16-7 at 23). In the quote, a line next to "Claims Made" is filled in with "XXX." *Id.* A line next to "Occurrence" is left blank. *Id.* The form lists a "retro date" of "8/15/99." *Id.* The form lists multiple "Mandatory Forms," one titled "CG 0002 (12/07) ... CGL Coverage Form-Claims Made Form" and another titled "CBL 1902 (07/08) ... Continuous or Progressive Limitation." *Id.*

On August 15, 2008, Robert Kempa of Westland Insurance Brokers sent an email to Chris Houska and Daniel Bonenfant of CRC, with a copy to Jill Conti of Westland Insurance Brokers, stating: "Chris and Dan, Per the insured request effective 8/15/2008 bind General liability coverage with Century Surety ... $2,000,000/$2,000,000 ... $10,000 SIR ... Rate $8.50 per 1000 receipts based on $8,000,000 Claims Made Coverage- Retro Date 8/15/1999.... Please contact Jill Conti with policy #'s and any further binding instructions." (Pl.'s Ex. 4, ECF No. 16-7 at 28). "CRC sent an email to Century on August 15, 2008 and requested that coverage be bound pursuant to Century's quote." (Def.'s RSSUF ¶ 12, ECF No. 20-4 at 5). "Century bound coverage

---

[4] Defendant does not dispute that a quote was provided, but disputes that the "quote" was for a claims made policy. *See id.*

pursuant to a binder effective August 15, 2008 and issued ... general liability insurance policy No. CCP564869 to Weir Brothers in effect from August 15, 2008 to August 15, 2009 ('the Century Surety policy') subject to a $10,000 self-insured retention ('SIR')." *Id.* ¶ 13.

The "binder" is a form with a "Century Surety Company-Construction Division" heading.  (Pl.'s Ex. 6, ECF No. 16-7 at 32).  In the binder, a line next to "Claims Made" is filled out with "XXX."  *Id.*  The form lists a "retro date" of "8/15/99."  *Id.*  The form lists multiple "Mandatory Forms," one titled "CG 0002 (12/07) ... CGL Coverage Form-Claims Made Form" and another titled "CBL 1902 (07/08) ... Continuous or Progressive Limitation."  *Id.*

Plaintiff's Exhibit 7 is an August 18, 2008 email from Daniel Bonenfant of CRC to Jill Conti of Westland Insurance Brokers, stating:

Policy #:    CCP 564869

Form:    Claims Made

Effective 8/15/08

Retero [sic] Date 8/15/99

Binder and invoice tomorrow when Julie gets back..

(Pl.'s Ex. 7, ECF No. 16-7 at 37).

"Century sent the Century Surety policy to CRC on September 9, 2008 and CRC sent the Century Surety policy to Weir Brothers' retail broker on September 23, 2008." (Def.'s RSSUF ¶ 16, ECF No. 20-4 at 6).  The third page of the Century Surety policy is titled "Schedule of Forms and Endorsements."  (Pl.'s Ex. 10, ECF No. 16-7 at 46). "CG 00 02 12 07 ... Comm General Liability Cov Form" is listed on that schedule.  *Id.* "CG 00 02 12 07" is titled "Commercial General Liability Coverage Form."  *Id.* at 71. "CG 00 02 12 07" states, in relevant part:

**b.** This insurance applies to "bodily injury" and "property damage" only if:

(**1**) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

**(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph c. below, during the policy period or any Extended Reporting Period we provide under Section V- Extended Reporting Periods.

*Id.* at 71.

The fourth page of the policy is titled "Policy Changes." *Id.* at 47. The following text appears on this page: "This endorsement changes the policy. Please read it carefully.... The following forms are included with the policy: ... CBL 1902 07/08 ... Continuous or Progressive Limitation." *Id.* Endorsement CBL 1902 (07/08), in turn, states: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." *Id.* at 108. Endorsement CBL 1902 (07/08) further states: "This endorsement modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART. In consideration of the premium charged the following changes are made to this policy: ...

Paragraph **b.** is deleted and entirely replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** The "bodily injury" or "property damage":

**(a)** did not first exist, or first occur, in whole or in part, prior to the inception date of this policy; or

**(b)** was not, nor is alleged to have been, in the process of taking place prior to the inception date of this policy, even if the actual or alleged "bodily injury" or "property damage" continues during this policy period; or

**(c)** was not caused by any construction defect or condition which resulted in "bodily injury" or

- 6 -

"property damage" which first existed, prior to
the effective date of this policy....

*Id.*

On October 2, 2008, Jill Conti of Westland Insurance Brokers, the Weir Brothers' "retail broker," sent an email to Julie Chakirian of CRC, stating: "This is a claims made policy and the GL retro date is 8/15/1999.  Refer to quote and binder."  (Def.'s RSSUF ¶ 23, ECF No. 20-4 at 9; Pl.'s Ex. 11, ECF No. 16-7 at 125).

"By letter dated December 18, 2008, Century received a tender of defense from Weir Brothers with respect to a lawsuit entitled *Jim Henry Construction, Inc. v. Michael Lewis Lloyd, et al.*, San Diego County Superior Court case No. 37-2007-00050255-CU-CL-NC" ("Jim Henry litigation").  *Id.* ¶ 36.

On December 31, 2008, Daniel Mayer of Century Surety sent an email to Weir Brother's then-counsel Adam Flury, stating, in relevant part:

> As we discussed, the most obvious reason behind our denial of coverage is that the claim falls outside our policy period.  The policy period is August 15, 2008 to August 15, 2009.  It is a claims made policy, so in order for any claim to be covered, two key conditions, among many others, must be met.  First, the alleged injury or damage must be caused by an occurrence that took place after the policy's retroactive date, if any.  Second, the claim must first be made against the insured during the policy period and not before the policy's inception.

(Pl.'s Ex. 28, ECF No. 16-7 at 253).  Plaintiff's Exhibit 29 is a letter dated January 26, 2009, from Daniel Mayer to Adam Flury that states, in relevant part:

> Both Insuring Agreements indicate that coverage applies only to claims first made against any insured during the policy period or any applicable Extended Reporting Periods.  The policy incepted on August 15, 2008, so no coverage is available for any claims first made against an insured prior to that date.  The claims against Weir described above were first made in May and August 2007.  Because these claims were not first made during the policy period, there is no coverage.

(Pl.'s Ex. 29, ECF No. 16-7 at 264).

Plaintiff's Exhibit 13 is a June 11, 2009 letter from Daniel Bonenfant of CRC to Robb Butterworth of Century Surety and an attached "Commercial Insurance

Application" made on behalf of Defendant.[5]  (Pl.'s Ex. 13, ECF No. 16-7 at 134-35). The "Commercial Insurance Application" lists a "Proposed Eff Date" of "8/15/2009" and a "Proposed Exp Date" of "8/15/2010." *Id.* at 135.  Under the subheading "Coverages," the "Commercial Insurance Application" contains an "x" next to "Commercial General Liability" and "Claims Made" but leaves blank the box next to "Occurrence." *Id.* at 138.  "Rather than renew, Weir Brothers requested that Century extend the policy.  Century agreed.  The policy was initially extended until December 15, 2009." (Def.'s RSSUF ¶ 25, ECF No. 20-4 at 10).  Plaintiff's Exhibit 16 contains an email and another attached "Commercial Insurance Application" made on behalf of Defendant.[6]  (Pl.'s Ex. 16, ECF No. 16-7 at 152-53).  Under the subheading "Coverages," the "Commercial Insurance Application" contains an "x" next to "Commercial General Liability" and "Claims Made," respectively, but leaves the box next to "Occurrence" blank.  *Id.* at 156.  "Rather than renew, Weir Brothers again requested that Century extend the policy.  Century agreed.  The policy was extended until February 15, 2010." (Def.'s RSSUF ¶ 27, ECF No. 20-4 at 11).

Plaintiff's Exhibit 17 is an email conversation between Dave Seaholm of Century Surety and Daniel Bonenfant of CRC regarding a renewal quote on the policy, that took place from November 18, 2009, until December 4, 2009.  On December 4, 2009, Dave Seaholm stated:  "The problem is this is a claims made policy and I don't have a quote letter set up to quote it.  I can offer an occ quote but it will be limited in that we will have to exclude past projects and the pricing might go up." (Pl.'s Ex. 17, ECF No. 16-7 at 166).  Daniel Bonenfont replied: "Thanks.... I'm sure they just want to continue with the Claims Made but I can offer that as an option....will you be sending a Claims Made quote soon?"  *Id.*  Dave Seaholm replied: "Due to the nature of Claims Made, I can't quote less than the expiring premium so I will agree to quote on a Claims Made basis

---

[5]  Neither party has submitted evidence indicating who prepared the application.

[6]  Neither party has submitted evidence indicating who prepared the application.

the same as expiring policy - $68,000 plus TRIA." *Id.* Following discussion of the proposed terms, Daniel Bonenfant stated: "Appreciate that offer can let me know what the annual policy would be." *Id.* at 165. Dave Seaholm responded: "Claims made or occurrence?" *Id.* Daniel Bonenfant responded: "Claims made." *Id.* Dave Seaholm replied: "Its going to be the same price and terms as expiration - the reason we can't go lower is due to the pricing of the Extended Reporting Period. The pricing for the ERP is based on the premium for the last policy term and if the last premium is greatly reduced from other years we don't get an accurate premium for the tail exposure." *Id.*

Jason Foreman states that Plaintiff's Exhibit 19 is a "quote for an 'occurrence' based general liability policy." (Declaration of Jason Foreman ("Foreman Decl.") ¶ 23, ECF No. 16-3 at 8). The "quote" is dated December 4, 2009. Under the subheading "Description of Risk," the "quote" states: "Renewal quote coming off a claims made policy. Risk is a custom home builder in the San Diego area." (Pl.'s Ex. 19, ECF No. 16-7 at 173).

"[Moody Creek Farms, LLC] ultimately terminated the construction contract with Weir Brothers in or around January 7, 2011, prior to completion of the project." (Def.'s RSSUF ¶ 3, ECF No. 20-4 at 2). "In or about September 2013, Century received its first notice of a potential claim by [Moody Creek Farms, LLC] against Weir Brothers. Century acknowledged receipt of the claim by letter dated September 30, 2013." (Def.'s RSSUF ¶ 4, ECF No. 20-4 at 4). The first notice that Century Surety received is a letter dated August 28, 2013, from Michael L. Kirby, counsel for Weir Brothers, to Robert Kempa of Michael Ehrenfeld Company. (Pl.'s Ex. 20, ECF No. 16-7 at 184; Def.'s Ex. 32, ECF No. 20-5 at 5). Michael Kirby states that Century Surety added an insert to the August 28, 2013 letter after Century Surety had received it. The insert states: "**Only policy (occurrence)** Matt Ridge 09/04/2013." (Declaration of Michael Kirby ("Kirby Decl.") ¶ 3, ECF No. 20-1 at 1; Def.'s Amended Ex. 32, ECF No. 24) (emphasis in original).

Charles Norris of Century Surety states that "Century Surety's initial coverage analysis revealed that Century Surety policy No. CCP564869 issued to Weir Brothers was a claims made policy, but mistakenly included an endorsement form (CBL 1902 (07/08)) which deleted the claims made provisions." (Declaration of Charles Norris ("Norris Decl.") ¶ 6, ECF No. 16-5 at 3). Charles Norris further states that "[a]s soon as Century Surety learned that the policy mistakenly included the CBL 1902 (07/08) endorsement [in September 2013], Century Surety requested that the Weir Brothers agree to reform the policy. Weir Brothers refused to agree to reform the policy." *Id.* ¶ 7.

Defendant's Exhibit 37 is a September 6, 2013 email from John Aye of Century Surety to Charles Norris of Century Surety, stating:

> Chuck, I have a new claim for Weir Brothers. We issued Weir Brothers under policy CCP564869 for the period 8/15/08 to 8/15/09 extended to 2/15/10. Coverage was written on form CG0002 12/09. The insuring agreement was modified by form CBL 0902 07/08. CBL1902 modifies part b of the insuring agreement which is the claims made section. Our intent was to issue a claims made policy. I would like some advice about what to do as the claim is being made after the policy period and after the extended reporting period.

(Def.'s Ex. 37, ECF No. 20-5 at 16).

"On or about October 24, 2013, [Moody Creek Farms] filed a lawsuit against Weir Brothers in San Diego County Superior Court, case No. 37-2013-00072663-CU-CD-CTL.... The [Moody Creek Farms claim] seeks to recover damages in excess of $5 million for the alleged defective construction of a multi-million dollar home in Bonsall." (Def.'s RSSUF ¶ 5, ECF No. 20-4 at 2).

Michael Kirby, counsel for Weir Brothers, states that "[i]n the last quarter of 2013, I received a telephone call from an individual who identified himself as an in-house lawyer for Century." (Kirby Decl. ¶ 2, ECF No. 20-1 at 5-6). Michael Kirby further states that the Century representative "said he was calling to ask me to stipulate to reform the Century policy issued to Weir Bros in 2008.... I asked him if there was coverage for Weir Bros in the MCL (Moody) construction defect case under the policy

as written and issued by Century, and he said there was.  He said Century could not deny a defense to Weir Bros based on the language and coverages in the policy, and could only do so if the policy was reformed." *Id.* ¶ 17.  Michael Kirby further states that he told the Century Surety representative he "would never stipulate to eliminate coverage for my client solely to benefit the insurer, particularly so many years after the policy was issued and where no prior claim of 'mistake' had ever been raised by the insurer." *Id.* ¶ 18.

It is undisputed that on January 8, 2014, "Century ... agreed to defend Weir Bros. in the [Moody Creek Farms litigation] subject to a $10,000 SIR and with a reservation of rights." (Def.'s RSSUF ¶ 35, ECF No. 20-4 at 16).[7]  Charles Norris states:

> In January 2014, Century Surety also contacted the law firm of Fredrickson, Mazeika & Grant LLP to determine whether that firm could assume Weir Brothers' defense once Weir Brothers exhausted the applicable SIR.  The law firm had no conflicts.  In early March 2014, Century Surety was advised by counsel for Weir Brothers that the SIR had been exhausted.  Century Surety formerly [sic] retained Fredrickson, Mazeika & Grant LLP in early March 2014 to defend Weir Brothers in the [Moody Creek Farms litigation].

(Norris Decl. ¶ 10, ECF No. 16-5 at 3).  Plaintiff commenced this action on March 26, 2014.  (ECF No. 1).

## III.  Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that is relevant to an element of a claim or defense, determined by the substantive law governing the claim or defense. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The moving party has the initial burden of demonstrating that summary judgment

---

[7]   Defendant contends that this notice was belated, but does not dispute that it was sent on this date.  *See id.*

is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). Where the party moving for summary judgment does not bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Cartrett*, 477 U.S. 317, 325 (1986); *see also United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542-43 (9th Cir. 1989) ("[O]n an issue where the plaintiff has the burden of proof, the defendant may move for summary judgment by pointing to the absence of facts to support the plaintiff's claim. The defendant is not required to produce evidence showing the absence of a genuine issue of material fact with respect to an issue where the plaintiff has the burden of proof. Nor does Rule 56(c) require that the moving party support its motion with affidavits or other similar materials negating the nonmoving party's claim.") (quotation omitted).

If the moving party meets the initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient."). The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotations omitted). The nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *See Anderson*, 477 U.S. at 256.

"When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citing *Houghton v. South*, 965

F.2d 1532, 1536 (9th Cir.1992)).  "In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *Id.*  "Once the moving party comes forward with sufficient evidence, 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'"  *Id.*  (quoting *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991)).

**IV. Discussion**

Plaintiff requests summary judgment on the Complaint for Reformation. Alternatively, Plaintiff requests summary judgment on both of Defendant's counterclaims and "a declaration that Weir Brothers Construction Corp.'s fifth prayer for relief requesting punitive damages has no merit."  (ECF No. 16 at 2).

**A. Reformation of the Policy**

Plaintiff contends that the Century Surety policy is a claims made policy, rather than an occurrence policy.  Plaintiff contends that claims made policies insure claims asserted against the insured during covered periods, while occurrence policies cover injuries or damages occurring during covered periods.  Plaintiff contends that the inclusion of endorsement CBL 1902 (07/08) was a mutual mistake because Plaintiff only includes endorsement CBL 1902 (07/08) in its occurrence policies as a limitation of coverage.  Plaintiff contends that reformation is warranted because there was a mistake in the "drawing of the contract"; the parties inadvertently included endorsement CBL 1902 (07/08). (ECF No. 16-1 at 21).  Plaintiff contends that both parties intended to enter into a claims made policy because both parties referred to the policy as a "claims made" policy and sought inclusion of a "retroactive date," which is a "feature unique to 'claims made' coverage...."  *Id.* at 21-22.  Plaintiff contends that the conduct of the parties after issuance of the policy demonstrates that they both believed the policy was a claims made policy.  Plaintiff contends that Defendant's asserted subjective intent in entering into the policy is not relevant, and only Defendant's objective intent is relevant.

Defendant contends that Plaintiff has failed to introduce any admissible evidence to show that Plaintiff intended to issue the policy without endorsement CBL 1902 (07/08). Defendant contends that the underwriter for the policy, Robert Butterworth, was not even contacted in the course of discovery, and the persons who are testifying as to Plaintiff's intent have no personal knowledge of the underwriting of the policy. Defendant contends that there is circumstantial evidence that there was no mistake in including endorsement CBL 1902 (07/08). Specifically, Defendant contends that endorsement CBL 1902 (07/08) was included in Plaintiff's quote, Plaintiff's binder, and the policy form. Defendant further contends that a Century underwriting assistant reviewed the policy and approved it, Century Surety sent the policy to Westland Insurance Brokers for their review, "stating that it was important to review the Policy for any mistakes," and Plaintiff reviewed the policy on two additional occasions when it approved the policy's renewal. (ECF No. 20 at 20). Defendant contends that Plaintiff's failure to uncover the mistake until 2013 was negligent, and Plaintiff's negligence bars the remedy of reformation. Defendant contends that Plaintiff is estopped from seeking reformation because of its "negligent handling and denial of the Weir Bros. claim." *Id.* at 24.

California Civil Code section 3399 provides:

> WHEN A CONTRACT MAY BE REVISED. When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.

Cal. Civ. Code § 3399.

> Reformation may be had for a mutual mistake or for the mistake of one party which the other knew or suspected, but in either situation the purpose of the remedy is to make the written contract truly express the intention of the parties. Where the failure of the written contract to express the intention of the parties is due to the inadvertence of both of them, the mistake is mutual and the contract may be revised on the application of the party aggrieved. When only one party to the contract is mistaken as to its provisions and his mistake is known or suspected by the other, the contract may be reformed to express a single intention entertained by both parties. Although a court of equity may revise a

written instrument to make it conform to the real agreement, it has no power to make a new contract for the parties, whether the mistake be mutual or unilateral.

In order to reform a written instrument, the party seeking relief must prove the true intent by clear and convincing evidence.

*Shupe v. Nelson*, 254 Cal. App. 2d 693, 700 (1967) (citations omitted); *see also In re Beverly Hills Bancorp*, 649 F.2d 1329, 1334 (9th Cir. 1981) ("Under California law, a written instrument is presumed to express the true intent of the parties. Reformation or revision on the ground of mutual mistake ... requires clear and convincing evidence of the alleged mistake.") (citing *Sec. First Nat. Trust & Sav. Bank v. Loftus*, 129 Cal. App. 650 (1933)).

"It is settled that, even in the absence of any misrepresentation, the negligent failure of a party to know or discover the facts as to which both parties are under a mistake does not preclude rescission or reformation because of the mistake." *Van Meter v. Bent Const. Co.*, 46 Cal. 2d 588, 594 (1956). However, gross negligence can constitute "neglect of a legal duty," which forfeits the right of the "party aggrieved to relief from the mistake." *L.A. & R.R. Co. v. New Liverpool Salt Co.*, 150 Cal. 21, 28 (1906); *see also* Cal. Civ. Code § 1577 (defining "mistake of fact" as "a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in ... [a]n unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or ... [b]elief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed"). "There is no flat or unequivocal rule in this state that all negligence on the part of the petitioning party will bar reformation. The rule is sufficiently flexible to excuse that negligence which a person of ordinary prudence might have been guilty of." *Voge, Inc. v. Rose*, 205 Cal. App. 2d 534, 539 (1962). "The correct rule is ... whether the failure to read a document is such negligence as to bar relief is ordinarily a question for the trier of fact." *Kantlehner v. Bisceglia*, 102 Cal. App. 2d 1, 3 (1951); *Tieso v. Tieso*, 67 Cal. App. 2d 872, 877 (1945); *see also Laing v. Occidental Life Ins. Co. of*

*Cal.*, 244 Cal. App. 2d 811, 819 (1966) (holding that the insured's failure to read an insurance policy was "not such a neglect of duty as to create an absolute bar").

In California, there is a general duty to read a contract one signs. *See Jefferson v. Cal. Dept. of Youth Auth.*, 28 Cal. 4th 299, 303 (2002) ("The general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its provisions are contrary to his intentions or understanding.") (citations and internal quotations omitted); *see also Fields v. Blue Shield of Cal.*, 163 Cal. App. 3d 570, 578 (1985) ("It is a general rule a party is bound by contract provisions and cannot complain of unfamiliarity of the language of a contract.") (citing *Madden v. Kaiser Found. Hosps.*, 17 Cal. 3d 699, 710 (1976)).

The duty to read applies to insurance contracts. *See id.* at 710 ("[A]n insured has a duty to read his policy."); *Taff v. Atlas Assur. Co.*, 58 Cal. App. 2d 696, 702 (1943) ("While the mere failure to read a policy does not in itself necessarily prohibit a revision of the contract, yet such failure on the part of the policy holder is a circumstance to be considered by the court on the question of his negligence.  So, also are the experience and intelligence of plaintiff factors to prove his neglect.  Unless the policy holder making such excuse gives a satisfactory explanation of his failure to read it, the trial court may be justified in rejecting his excuse and in denying the reformation.") (citations omitted).

In this case, Plaintiff has failed to meet its initial summary judgment burden of demonstrating, under the clear and convincing evidence standard, that the mutual intent of the parties was to exclude endorsement CBL 1902 (07/08), such that Plaintiff would be entitled to a "directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480.  Plaintiff has submitted the following evidence in order to demonstrate that it intended to issue a claims made policy prior to issuing the policy: (1) an email from Chris Houska of CRC stating that Defendant could not

switch to an occurrence policy; (2) a quote with "Claims Made" checked; (3) a binder with "Claims Made" checked; and (4) an email from Daniel Bonenfant of CRC to Jill Conti of Westland Insurance Brokers, referring to the policy as "Claims Made." *See* Pl.'s Exs. 1, 3, 6, 7. Plaintiff has submitted the policy itself as evidence that it intended to issue a claims made policy. The policy includes "CG 00 02 12 07 ... Comm General Liability Cov Form[,]" which defines coverage as claims made during the policy period or "Extended Reporting Period." *See* Pl.'s Ex. 10. Plaintiff has submitted the following evidence after issuing the policy to demonstrate that its intent was always to issue a claims made policy: (1) Daniel Mayer denying coverage for the Jim Henry litigation by email and letter on the grounds that the claim was not made during the policy period; (2) Dave Seaholm of Century Surety and Daniel Bonenfant of CRC referring to the policy as a "claims made" policy; and (3) a December 2009 occurrence-based quote prepared by Century Surety, referring to the existing policy as "claims made." *See* Pl.'s Exs. 17, 19, 28-29. Plaintiff's evidence, if uncontroverted at trial, would not entitle Plaintiff to a directed verdict under the clear and convincing evidence standard. A contrary inference can be drawn from this evidence: endorsement CBL 1902 (07/08) was included in the quote, again in the binder, and again in the policy because Plaintiff intended to include it. This inference can be further drawn from evidence that the policy, as written, was extended twice. Finally, any inferences that may be drawn in Plaintiff's favor may be weakened by the fact that Plaintiff has presented no first-hand evidence of the intent of its underwriters.[8]

Plaintiff has submitted the following evidence in order to demonstrate that Defendant also intended to enter into a claims made policy prior to issuance of the policy: (1) an application submitted on behalf of Defendant with the "Claims Made" box checked; (2) Robert Kempa of Westland Insurance Brokers referring to the policy

---

[8] The Court expresses no opinion of whether Plaintiff's evidence is sufficient to meet the clear and convincing evidence standard if presented before the finder of fact at trial.

as "claims made" and requesting that Plaintiff bind the policy; and (3) Jill Conti of Westland Insurance Brokers referring to the policy as "claims made." *See* Pl.'s Exs. 1, 4, 11. Plaintiff has submitted the policy itself as evidence that Defendant intended to receive a claims made policy. The policy includes "CG 00 02 12 07 ... Comm General Liability Cov Form[,]" which defines coverage by claims made during the policy period or "Extended Reporting Period." *See* Pl.'s Ex. 10. Plaintiff has submitted evidence that Defendant believed it had received a claims made policy after receiving the policy because two applications were submitted on behalf of Defendant with the "claims made" box checked. *See* Pl.'s Exs. 13, 16. Plaintiff's evidence, if uncontroverted at trial, would not entitle Plaintiff to a directed verdict on Defendant's intent under the clear and convincing evidence standard. A contrary inference can be drawn from this evidence: endorsement CBL 1902 (07/08) was included in the quote, again in the binder, and again in the policy because Defendant intended for it to be included. This inference can be further drawn from evidence that Defendant requested and received an extension on the policy, as written, on two occasions. This contrary inference may also be drawn from Weir Brothers tendering defense in the Jim Henry litigation. Finally, Plaintiff submits no evidence demonstrating who prepared the application for the policy or application for the 2009 renewal of the policy.[9]

Even assuming that Plaintiff has met its initial summary judgment burden, Defendant has submitted evidence raising a triable issue of fact as to Defendant's intent. Defendant has submitted the Declaration of Robert Weir, "the sole owner of" Weir Brothers, who states that "there may have been some discussion about 'claims made' versus 'occurrence' policies, but I did not, and still do not, really understand, the difference between them. I agreed to buy an insurance policy on Weir Bros. behalf with Century because it seemed to offer the most coverage for the best price." (Declaration

---

[9] The Court expresses no opinion of whether Plaintiff's evidence is sufficient to meet the clear and convincing evidence standard if presented before the finder of fact at trial.

of Robert Weir ("Weir Decl.") ¶¶ 2, 5, ECF No. 20-2 at 2). Defendant has also submitted evidence that an employee of Century Surety referred to the policy as an "occurrence" policy when he added an insert to a letter from Defendant's counsel in September 2013 that gave Plaintiff notice of a potential claim by Moody Creek Farms. (Def.'s Amended Ex. 32, ECF No. 24). The Court concludes that triable issues of fact exist as to the mutual intent of the parties.

Finally, triable issues of fact exist as to whether Plaintiff was grossly negligent in failing to discover the inclusion of endorsement CBL 1902 (07/08) in the policy and whether Plaintiff neglected a legal duty by failing to read the policy it issued until five years after issuance of the policy. *Kantlehner*, 102 Cal. App. 2d at 3; *Tieso*, 67 Cal. App. 2d at 877; *see also* Cal. Civ. Code § 1577 (excluding "neglect of legal duty" from the definition of "mistake of fact"); *L.A. & R.R. Co.*, 150 Cal. at 28 (stating that gross negligence can constitute "neglect of a legal duty"); *Jefferson*, 28 Cal. 4th at 303 (describing a party's duty to read contracts he signs). There is evidence in the record that Plaintiff drafted the policy. There is evidence in the record that endorsement CBL 1902 (07/08) was included in the quote, the binder, and the policy itself. There is evidence in the record that Plaintiff renewed the policy on two occasions with the inclusion of endorsement CBL 1902 (07/08). Finally, there is evidence in the record that Plaintiff did not discover the inclusion of endorsement CBL 1902 (07/08) until September 2013, five years after the policy was issued.

Plaintiff's motion for summary judgment on its claim for reformation is denied.

**B. Defendant's First Counterclaim for Declaratory Relief**

Defendant's first counterclaim for declaratory relief seeks a judicial declaration that the policy is a valid and binding occurrence policy and provides coverage for the Moody Creek Farms litigation.

Plaintiff moves for summary judgment on Defendant's first counterclaim for declaratory relief on the ground that it has no duty to defend Defendant in the Moody

Creek Farms litigation under the reformed policy. Plaintiff contends that "[i]t is undisputed that no claim was *first* made against Weir Brothers during the policy period as required by the reformed policy." (ECF No. 16-1 at 24) (emphasis in original). Plaintiff contends: "As reformed, Century's policy never applied to the [Moody Creek Farms litigation] as a matter of law." *Id.* at 25.

Because Plaintiff's motion for summary judgment on Defendant's first counterclaim for declaratory relief is dependent on reformation of the policy, Plaintiff's motion for summary judgment on Defendant's declaratory relief counterclaim is denied.

## C. Defendant's Second Counterclaim for Breach of the Covenant of Good Faith and Prayer for Punitive Damages

Defendant's second counterclaim for breach of the covenant of good faith seeks compensatory and punitive damages because Plaintiff is "attempting to reform the policy without valid legal grounds" and engaged in "dilatory claims handling" with respect to the Moody Creek Farms litigation. (ECF No. 8 at 16).

Plaintiff moves for summary judgment on Defendant's second counterclaim for breach of the covenant of good faith on the ground that Plaintiff had no duty to defend Defendant under the policy because there "was no potential for coverage under the policy." (ECF No. 16-1 at 27). Plaintiff also seeks "a declaration that Weir Brothers Construction Corp.'s fifth prayer for relief requesting punitive damages has no merit." (ECF No. 16 at 2). Plaintiff contends that "there was no potential for coverage under the policy and no duty to defend Weir Brothers. Thus, Weir Brothers cannot prevail on its causes of action for breach of the covenant of good faith nor its request for punitive damages. Weir Brothers cannot prove that Century withheld policy benefits 'without proper cause.'" (ECF No. 16-1 at 27). Plaintiff contends that "the undisputed material facts establish that no contract benefits are owed because the reformed policy provides no coverage to Weir Brothers for the [Moody Creek Farms litigation]." *Id.* Plaintiff

contends that it did not engage in dilatory tactics because it immediately asked Defendant to agree to reform the policy once it learned of the alleged mistake, and it agreed to defend Defendant in the Moody Creek Farms litigation, subject to a reservation of rights.

Defendant contends that "the trier of fact could reasonably find that Century breached the covenant of good faith and fair dealing because it acted unreasonably when it sought reformation without valid grounds, and used improper and dilatory tactics to avoid paying on a covered claim." (ECF No. 20 at 25). Defendant contends that Plaintiff breached the covenant of good faith when it "denied the *2008 Jim Henry Claim* without ever telling its own insured the Policy provided occurrence coverage, not claims made coverage." *Id.* Defendant contends that Plaintiff is "unreasonable" for seeking reformation in court to avoid paying for the defense in the Moody Creek Farms litigation, given Plaintiff's negligence. *Id.* Defendant contends that Plaintiff engaged in "dilatory tactics" by failing to inform Defendant that "there may be an issue regarding Weir Bros' coverage" for four months after discovering the "'mistake.'" *Id.* at 26. Defendant contends that this evidence is sufficient to support a finding of malice, oppression, or fraud.

In reply, Plaintiff contends that there is no evidence in the record of bad faith or malice, oppression, or fraud. Plaintiff contends that the evidence demonstrates that both parties believed the policy was a claims made policy when Plaintiff denied coverage for the Jim Henry litigation. Plaintiff contends that the evidence demonstrates that both parties were mistaken until Plaintiff noticed the inclusion of endorsement CBL 1902 in September 2013. Plaintiff contends that it contacted Defendant immediately after learning of the alleged mistake.

### i. Breach of the Covenant of Good Faith

The Amended Answer and Counterclaims alleges that Plaintiff breached the covenant of good faith based on the following conduct: (1) attempting to reform the

policy without valid legal grounds; (2) dilatory claims handling; (3) failing to pay $6,906 over and above the $10,000 self-insured retention ("SIR"); and (4) failing to provide Defendant with *Cumis* counsel in the Moody Creek Farms Litigation.   In opposition to the pending motion for summary judgment, Defendant contends that there are triable issues of fact with respect to whether Plaintiff breached the covenant of good faith, based on the following conduct: (1) denial of the 2008 Jim Henry claim; (2) attempting to reform the policy without valid legal grounds; and (3) dilatory claims handling.

"Bad faith cases are analyzed in a three-step process: First, was there a breach at all so as to warrant contract damages?  Second, was the breach unreasonable so as to warrant tort damages?  Third, was the breach so egregious that there is evidence of 'oppression, fraud or malice' under Civil Code section 3294, subdivision (a) so as to warrant punitive damages?" *Griffin Dewatering Corp. v. N. Ins. Co. of N.Y.*, 176 Cal. App. 4th 172, 194-95 (2009).

"An insurer must defend its insured against claims that create a *potential* for indemnity under the policy." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (2005) (emphasis in original).  "Determination of the duty to defend, depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy.  But the duty also exists where extrinsic facts known to the insurer suggest that the claim may be covered." *Id.* (citations omitted).  "The defense duty arises upon tender of a potentially covered claim and lasts until the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage." *Id.* at 655 (citation omitted).  "To defend meaningfully, the insurer must defend immediately. To defend immediately, it must defend entirely." *Buss v. Superior Court*, 16 Cal. 4th 35, 49 (1997).  "When the duty, having arisen, is extinguished by a showing that no claim can in fact be covered, 'it is extinguished only prospectively and not retroactively.'" *MV Transp.*, 36 Cal. 4th at 655 (quoting *Buss*, 16 Cal. 4th at 46).

"[A]n insurer's denial of or delay in paying benefits gives rise to tort damages only if the insured shows the denial or delay was unreasonable." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007). "[A]n insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001). "The genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. A *genuine* dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." *Wilson*, 42 Cal. 4th at 723 (emphasis in original). "[A]n insurer is entitled to summary judgment based on a genuine dispute over coverage or the value of the insured's claim only where the summary judgment record demonstrates the absence of triable issues ... as to whether the disputed position upon which the insurer denied the claim was reached reasonably and in good faith." *Id.* at 724. "While the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence." *Chateau Chamberay*, 90 Cal. App. 4th at 346; *see also Dalrymple v. United Servs. Auto. Ass'n*, 40 Cal. App. 4th 497, 511 (1995) (to same effect).

In this case, Plaintiff received its first notice of a potential claim from Weir Brothers around September 2013. Michael Kirby, counsel for Weir Brothers, states that "[i]n the last quarter of 2013, I received a telephone call from an individual who identified himself as an in-house lawyer for Century." (Kirby Decl. ¶ 2, ECF No. 20-1 at 5-6). Michael Kirby further states that the Century Surety representative "said he was calling to ask me to stipulate to reform the Century policy issued to Weir Bros in 2008.... I asked him if there was coverage for Weir Bros in the MCL (Moody)

construction defect case under the policy as written and issued by Century, and he said there was.  He said Century could not deny a defense to Weir Bros based on the language and coverages in the policy, and could only do so if the policy was reformed." *Id.* ¶ 17.  Michael Kirby further states that he told the Century Surety representative he "would never stipulate to eliminate coverage for my client solely to benefit the insurer, particularly so many years after the policy was issued and where no prior claim of 'mistake' had ever been raised by the insurer." *Id.* ¶ 18.  It is undisputed that Plaintiff sent Defendant a letter on January 8, 2014, agreeing to defend Defendant subject to a reservation of rights to reform the policy and recoup expenses.  (Def.'s RSSUF ¶ 35, ECF No. 20-4 at 16-17).  Plaintiff commenced this action on March 26, 2014.  (ECF No. 1).

The Court finds that Defendant has come forward with evidence raising triable issues of material fact with respect to whether Plaintiff unreasonably delayed informing Defendant of its legal position or in agreeing to defend Defendant, subject to a reservation of rights.  Plaintiff's motion for summary judgment on Defendant's second counterclaim for breach of the covenant of good faith is denied.

### ii.  Punitive Damages

California law permits the recovery of punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice...."  Cal. Civ. Code § 3294(a).  "Malice" is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Id.* § 3294(c)(1).  "Oppression" is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.* § 3294(c)(2).  "Fraud" is defined as "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or

1    otherwise causing injury." *Id.* § 3294(c)(3).

2    In this case, Michael Kirby, counsel for Weir Brothers, received a phone call in

3    the last quarter of 2013, requesting that Weir Brothers agree to reform the policy.

4    Century Surety sent Weir Brothers a letter on January 8, 2014, agreeing to defend Weir

5    Brothers in the Moody Creek Farms litigation, subject to a reservation of rights to

6    reform the policy.   Plaintiff has met its initial summary judgment burden of

7    demonstrating an "absence of evidence to support the nonmoving party's case" that

8    Plaintiff acted with "oppression, fraud, or malice." *Celotex*, 477 U.S. at 325; Cal. Civ.

9    Code § 3294(a).

10   Defendant contends that a jury could infer Plaintiff's malice and oppression from

11   Plaintiff's failure to inform Defendant in 2009 that it had occurrence based coverage.

12   Defendant further contends that Plaintiff acted with malice and oppression by seeking

13   reformation of the policy.

14   Defendant has failed to come forward with evidence which would permit the

15   inference that Plaintiff intentionally concealed from Defendant in 2009 that the policy

16   may be occurrence based.  There is no evidence in the record to support the inference

17   that Plaintiff or any of its agents were aware of the inclusion of endorsement CBL 1902

18   (07/08) in the policy in 2009.  In addition, Defendant has failed to come forward with

19   evidence to support the allegation that Plaintiff brought this action with malice or

20   oppression.  Plaintiff's pursuit of an equitable remedy to protect its own interests does

21   not amount to "despicable conduct" or conduct "intended by the [plaintiff] to cause

22   injury to the [defendant]."   Cal. Civ. Code § 3294(c)(1)-(2).  Finally , Defendant has

23   failed to come forward with evidence which would permit the jury to infer oppression,

24   fraud, or malice from any delay by Defendant with respect to the Moody Creek Farms

25   litigation.   The Court concludes that Defendant has failed to come forward with

26   evidence raising a triable issue of fact as to Plaintiff's "oppression, fraud, or malice."

27   *Id.* § 3294(a).  Plaintiff's motion for summary judgment on Defendant's prayer for

28

1 | punitive damages is granted.

2 | **D. Plaintiff's Objections to Evidence**

3 | Plaintiff objects to portions of the Declarations of Michael Quade, Michael

4 | Kirby, and Robert Weir as inadmissible opinion or argument. *See* ECF No. 22-2. The

5 | Court did not consider the arguments or opinions of these individuals in ruling on

6 | Plaintiff's motion for summary judgment.

7 | **V. Conclusion**

8 | Plaintiff's Motion for Summary Judgment (ECF No. 16) is GRANTED in part

9 | and DENIED in part. Plaintiff's motion for summary judgment on Defendant's prayer

10 | for punitive damages is GRANTED. Plaintiff's motion for summary judgment is

11 | denied in all other respects.

12 | DATED: April 9, 2015

**WILLIAM Q. HAYES**
United States District Judge